NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
THADDEUS KASUBINSKI                 :
                                    :    Civil Action No. 10-4351 (PGS)
        Plaintiff,                  :
                                    :
    v.                              :
                                    :    OPINION AND ORDER
COMMISSIONER OF SOCIAL SECURITY,    :
                                    :
        Defendant.                  :
                                    :
_____:

      This matter is before the Court upon the appeal of Plaintiff Thaddeus Kasubinski ("Kasubinski" or "Plaintiff") from the Commissioner of Social Security Administration's final decision denying his application for Disability Insurance Benefits. Mr. Kasubinski filed an application for disability insurance benefits on August 14, 2002 alleging disability beginning on January 7, 2000. (R. 34, 93). This application was denied, and an appeal was filed. On August 7, 2007, Joel A. Pisano, U.S.D.J., issued an order remanding the matter due to an "appearance of bias." (Civil Action No. 05-5400). Upon rehearing, ALJ Michal Lissek awarded the Plaintiff disability insurance benefits concurrent with the date of his 55th birthday, January 13, 2003, but found him capable of performing light work prior to that date. The Appeals Council affirmed and the matter was thereafter appealed to the District Court.

      The issue here is whether the administrative decision denying disability between the alleged onset date of January 7, 2000 and the date of Plaintiff's 55th birthday, January 13, 2003, is based on substantial evidence.

I.

<u>Background</u>

Mr. Kasubinski was born on January 13, 1948.  He is a high school graduate with some trade school training for welding. Since 1995, Plaintiff's job experience has been in plumbing, pipefitting and roofing.  His job as a plumber and pipefitter required him to lift and carry heavy pipes, a thirty pound toolbox, and stand most of the day.  As a roofer's helper, he lifted shingles onto roofs and helped clean up.  This job required Kasubinski to lift up to 50 pounds and frequently lift 10 pounds.  All of Plaintiff's past relevant work was characterized as "heavy work activity."

There is no doubt that Kasubinski had some medical impairments during the relevant time period.  Plaintiff was diagnosed with anemia, thrombocytopenia (low platelet count), rectal bleeding, diverticulitis, and cirrhosis of the liver. Plaintiff testified that he worked full time up until 1996 when he began feeling sick, exhausted and dizzy. He stated that there were times when he would sit down and be unable to stand for more than 20 minutes.  Often the act of standing would lead to dizziness.  It was in 1996 that he was diagnosed with anemia and diverticulitis.  At that time, Plaintiff alleges that he suffered from excruciating pain in his stomach, and had rectal bleeding which Kasubinski alleged occurred a few times a week.  Plaintiff also has liver damage due to drinking his "share of beer over the years."  Plaintiff testified that he drank approximately a six pack of beer per day since he was 20 years of age.  Prior to 2000, Plaintiff stated that he was unable to work full time due to his symptoms and worked only part time hours.   In 2000, he stopped working due to his symptoms which were worsening. Although not in the relevant time period, in 2005 Plaintiff has had three operations.  They were a surgical repair of a hole in his bladder, removal of 12 inches of his colon from diverticulitis, and removal of his appendix.  When Plaintiff was unable to work, he would perform some household chores such as washing dishes and laundry.

Medical Reports and Treatment

Plaintiff has a history of rectal bleeding, diverticulitis, iron deficient anemia, thrombocytopenia and cirrhosis of the liver. However, the record does not document an overwhelming amount of treatment for these conditions. For instance, in 1993, Plaintiff was hospitalized and diagnosed with diverticulitis and internal hemorrhoids. His treatment was conservative, and he was advised to follow a high fiber, low fat diet.

Three years later, a July 3, 1996 letter from Marcus P. Porcelli, M.D., a hematologist, to Plaintiff's treating physician Lawrence Weissman, indicated that Plaintiff had thrombocytopenia (low platelet count). Plaintiff was advised that even though his platelet count was low, he could lead a normal life. Dr. Porcelli's other treatment notes range from 1999 to 2003 where Plaintiff saw him for cough and fever, normal blood work, blood pressure medicine, and for a referral for a colonoscopy. Plaintiff was seen in January 2001 for follow up blood work and reported to be "feeling good".

Plaintiff was hospitalized at St. Peter's Hospital in March, 2001 due to chronic gastrointestinal bleeding, black and red stools, and a low hemoglobin blood level which decreased to a level 5. On March 14, 2001, Plaintiff underwent a colonoscopy and endoscopy at St. Peter's University Hospital. The preoperative diagnosis was iron deficiency anemia with hemoglobin as low as 5, low platelets and chronic intermittent gastrointestinal bleeding with occasional black stools. The colonoscopy revealed hundreds of tiny red spots in the lower rectum which may have been from some trauma. The endoscopy revealed hundreds of tiny red spots in the upper half of the stomach. Lawrence Pickover, M.D. opined that Plaintiff might have portal hypertensive gastropathy, to which he concluded there is no uniformly agreed upon treatment. In a December 6, 2002 report, Dr. Pickover stated that the claimant's endoscopic studies showed multiple telangiectasis lesions in the

stomach and colon which were the probable source of his blood loss.

On October 10, 2002, Plaintiff was seen by Francky Merlin, M.D. for a consultative examination. Plaintiff reported a history of anemia, black stools, and gastritis. Kasubinski reported that he was on iron therapy. A review of systems found that Plaintiff had heart palpitations for which he was prescribed propranolol. On physical examination, Plaintiff was found to be a well developed male who was alert, conscious, oriented and in no acute distress. His physical examination was essentially normal with the exception of anemia. Dr. Merlin found Plaintiff to be able to sit, stand, walk, lift, carry, handle objects, hear, speak and travel.

## II.

On January 27, 2003, the Residual Functional Capacity Assessment ("RFC") found Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour day; sit with normal breaks for a total of about 6 hours in an 8 hour day; and pushing and/or pulling, including operation of hand and/or foot controls, were unlimited. There were no postural, manipulative, visual, communicative, or environmental limitations noted.

At a hearing, Plaintiff testified before the ALJ and Martin Fechner, M.D. (a medical expert) that he stopped drinking in 2000 due to his low platelet count. Dr. Fechner testified that Plaintiff's anemia could have been caused by bleeding from the gastrointestinal tract or from a chronic disease. Plaintiff's alcohol use was described to be one of the main reasons for the gastrointestinal bleeding.

With regard Plaintiff's anemia and low platelet count in 2001, Dr. Fechner testified that Plaintiff's platelet count was between 50,000 and 70,000, and that his experience was that there are usually no symptoms associated with platelet counts of that range. Dr. Fechner testified that Plaintiff was hospitalized on March 14, 2001 for anemia and a low hemoglobin level which dropped as low

as a level 5. According to Dr. Fechner, a hemoglobin level of 5 would require a blood transfusion, which was performed at that time; but three months later (June 2001), Plaintiff's hemoglobin level increased to 14, which Dr. Fechner opined was within normal limits. While Plaintiff reported repeated transfusions, the medical record supports only one transfusion (March 2001).

With regard to the Plaintiff's cirrhosis of the liver, a September 2003 albumin test found the liver was functioning within normal limits, liver enzymes were normal, and his AST (aspartate aminotransferase) levels were slightly elevated. Similarly, Dr. Fechner referenced a May 20, 2002 laboratory report where the albumen was low, bilirubin was normal and liver enzymes were normal, indicating a functioning liver.

Overall, during the three year period prior to his disability, Dr. Fechner found that claimant did not have an impairment or combination of impairments that met or medically equaled the criteria of any of the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Dr. Fechner opined that during the relevant time period, Plaintiff could perform light work.

### III.

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on

evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step sequential process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. First, the plaintiff must establish that he is not currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. *See Plummer*, 186 F.3d at 428 (citing *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). In step two, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If plaintiff fails to demonstrate a severe impairment, disability must be denied.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*; *Burnett*, 220 F.3d at 118-20. If it does, the plaintiff is automatically disabled. 20 C.F.R. §404.1520(d). But, the plaintiff will not be found disabled simply because he is unable to perform his previous work. In determining whether the plaintiff's impairments meet or equal any of the listed impairments, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning. *Burnett*, 220 F.3d at 119-20. A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review." *Id.* at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to steps four and five. *Plummer*, 186 F.3d at 428. In step four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant

6

work." *Id.*; *see also Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1520(d).  This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity (RFC); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work.  *Burnett*, 220 F.3d at 120.

If the plaintiff cannot perform the past work, the analysis proceeds to step five.  In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform.  *See* 20 C.F.R. § 404.1520(g).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  *See Yuckert*, 482 U.S. at 146 n.5; *Burnett*, 220 F.3d at 118-19; *Plummer*, 186 F.3d at 429; *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986).  In demonstrating there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience.  20 C.F.R. § 404, subpt. P, app. 2.  However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments, "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels."  *Sykes*, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation.  *Id.* at 270-71, 273-74; *see also Burnett,* 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply

7

applying the Grids, including… testimony of a vocational expert.")  If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.  20 C.F.R. § 404.1520(g).

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record.  42 U.S.C. § 405(g).  *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Doak, 790 F.2d 26 at 28.  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*"  Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.  Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n.9.

The reviewing court must view the evidence in its totality.  *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *see also Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987).  Nevertheless, the district court's review is deferential to the ALJ's factual determinations.  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.

1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. *See* 20 CFR § 404.1529. Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless 'medical signs' or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b); *Hartranft*, 181 F.3d at 362. In *Hartranft*, claimant's argument that the ALJ failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

IV.

The Judge's Decision

On May 2, 2008, Michal Lissek, ALJ issued a partially favorable decision. The ALJ determined that Plaintiff was disabled beginning January 13, 2003, when Plaintiff turned 55 years of age. In making that determination, the ALJ followed the five step sequential evaluation for determining disability. The ALJ found that Plaintiff's anemia, thrombocytopenia (low platelet count), rectal bleeding, history of diverticulitis, and cirrhosis of the liver were severe. The ALJ then determined that Plaintiff's impairments did not meet or equal a listed impairment at step four. (R. 259); 20 C.F.R. §§ 404.1525, 404.1526 and Part 404, Subpart P, Appendix 1). At Step 5, the ALJ found the Plaintiff did not suffer from non-exertional restrictions to the extent that they would have prevented him from performing light work and therefore applied the medical-vocational guidelines (Appendix 2 of 20 C.F.R., Part 404, Subpart P).

The ALJ concluded that before January 13, 2003, based on Plaintiff's age, education, work experience, and RFC, he could perform light work and that there were a significant number of jobs in the national economy that Plaintiff could perform. However, the ALJ found that beginning January 13, 2003, when Plaintiff turned 55, there were no such jobs, and Plaintiff was found disabled. Applying the guidelines requires the ALJ to evaluate age as a vocational factor at three different age categories. (20 C.F.R. § 404.1563). Generally, age is categorized as a younger person (under age 50), a person closely approaching advanced age (age 50-54), and persons of advanced age (age 55 or older). Here, Plaintiff turned 55 years of age on January 13, 2003. As such, Plaintiff's age category moved from a person closely approaching advanced age to a person of advanced age. In applying the medical evidence to the appropriate age category, the ALJ found that Plaintiff was not disabled for the time period before he reached 55, but was disabled thereafter.

10

V.

Plaintiff argues that the ALJ improperly utilized the medical-vocational guidelines in making the disability determination because the Plaintiff alleges non-exertional impairments of fatigue and dizziness. However, a review of the record confirms the ALJ's finding there was insufficient evidence to substantiate Plaintiff's allegations that his impairments produced non-exertional restrictions to the extent that they would have prevented him from performing light work during the relevant time period. As such, the ALJ made no error in utilizing the medical-vocational guidelines in determining that Plaintiff was not disabled before January 13, 2003.

The issue remaining is whether ALJ Lissek's opinion that Plaintiff could perform light work prior to January 13, 2003 is supported by the substantial evidence of the record. Although Plaintiff did suffer from a number of medical conditions, it is not sufficient that he establish the mere presence of a disease or impairment. *Alexander v. Shalala*, 927 F. Supp. 785 (D.N.J. 1995), aff'd per curiam, 85 F. 3d 611 (3d Cir. 1996). Plaintiff must show that the disease or impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity. *Id.* In this case, Plaintiff's treating physician, Dr. Porcelli, found Plaintiff could "live a normal life" with a low platelet count. In addition, the medical expert testified that Plaintiff's low platelet count was "not meaningful because it was not low enough to cause any problems." With regard to his gastrointestinal symptoms, as stated above, the record documents hospitalization once in 2001 at which time his physician opined that Plaintiff might have portal hypertensive gastropathy secondary to cirrhosis of the liver, but concluded there was no uniformly agreed upon treatment for that condition.

IT IS on this 6th day of December, 2011;

ORDERED that the decision of the ALJ is based on substantial evidence and is affirmed. The complaint is dismissed.

<u>s/Peter G. Sheridan</u><br>
PETER G. SHERIDAN, U.S.D.J.